RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAY 2 4 2024

FILED
DOCKETED
DATE
INITIAL

## CASE NO. 24-2839

# IN THE

# UNITED STATES COURT OF APPEALS

# FOR THE NINTH CIRCUIT

### WINSTON MAURICE BROWN

**Plaintiff-Appellant,**

**v.**

### LAFAYETTE FEDERAL CREDIT UNION
### Defendant – Appellees

### ON APPEAL FROM U.S DISTRICT COURT
### FOR THE CENTRAL DISTRICT OF CALIFORNIA
### EASTERN DIVISION

### OPENING BRIEF OF THE APPELLANT

SUBMITTED BY:
Winston Maurice Brown
24102 Madeira Ln
Murrieta, Ca. 92562
951-407-5553
Mauricewb1@mail.com

1

# CERTIFICATE OF INTERESTED PERSONS

Winston Maurice Brown v. Lafayette Federal Credit et. al., Union No. 24-2839

The undersigned Appellant certifies that the following listed persons and entities

as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case.

These representations are made in order that the judges of this court may evaluate possible

disqualification or recusal.

Plaintiff-Appellant:

Winston Maurice Brown, In Pro Se

Defendant-Appellees:

Lafayette Federal Credit Union

Counsel:

For Defendant- Appellee

Rea Stelmach, Esq. SBN 296671 (Silverman Theologou, LLP)

Winston Maurice Brown,

Plaintiff-Appellant In Pro Se

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................................. iii

JURISDICTIONAL STATEMENT ............................................................... 1

STATEMENT OF ISSUES ............................................................................ 4

LEGAL QUESTION ..................................................................................... 4

STATEMENT OF CASE ............................................................................... 6

ARGUMENT ................................................................................................. 9

IMPLIED STAYS PENDING JUDICIAL REVIEW ................................. 12

CONCLUSION ............................................................................................ 10

STATEMENT REGARDING ORAL ARGUMENT ................................. 15

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Cases**                                                                         **Page**

Commerce Bank v. Superior Court 1992, Cal. Ct. App., 8 Cal. App.4[th] 582.................12, 13

Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175...........1, 2, 3, 5, 6, 7, 10, 11

Daly v. San Bernardino Cnty. Bd. of Supervisors 2021, Cal., 11 Cal.5th 1030..............12

Earls v. Superior Court 1971, Cal., 6 Cal.3d 109...............................................2, 3, 5, 6

Fuller v. State of California 1969, Cal. Ct. App., 1 Cal.App.3d 664.......................2, 3, 5, 6

Mathis v. New York Life Ins., 133 F.3d 546, 547-48 (7th Cir. 1998) ...................4, 7, 8, 10

People ex rel. San Francisco Bay Conservation and Development Commission v. Town of Emeryville 1968, Cal., 69 Cal.2d 533.....................................................................13

**Statutes**

28 U.S.C. § 1331...............................................................................................1

31 U.S.C. §§ 3729-32 (2000)...............................................................................1

California Rules of Court (CRC) 8.104(a)..............................................................1

California Corporation Code Section 2015....................................................12, 14, 15

Rule 4...........................................................................................................14

Tile 28 Section 1332.........................................................................................1

**Other Authorities**

U.S. Constitution 7th Amendment.........................................................................15

# JURISDICTIONAL STATEMENT

The federal courts have jurisdiction over this action under 28 U.S.C. § 1331 and 31 U.S.C. §§ 3729-32 (2000). The venue was proper in the United States District Court for the Central District of California (the "District Court") under id. § 3732, because at least one or more Appellant/Appellee[s] reside in different States. Tile 28 Section 1332 Appellee transacted business in the district, and at least one act proscribed by id. § 3729 occurred in that District. This Court possesses jurisdiction over this appeal under 28 U.S.C. § 1291 (2000).

On March 1st, 2024, the District Court issued an order to dismiss Appellant's case against Lafayette Federal Credit Union without Prejudice. On April 26th, 2024, the Appellant filed their timely Notice of Appeal. (see Exhibit G)

The discrepancy between the Appellant's loan application and his declaration to proceed in forma pauperis (IFP) raised significant legal questions regarding his financial eligibility for IFP status. The Federal Rules of Appellate Procedure (FRAP) 3(c) and California Rules of Court (CRC) 8.104(a) provide procedural guidelines for filing notices of appeal, which are not directly relevant to the determination of IFP status but are crucial for understanding the procedural context in which such determinations are made. In assessing the Appellant's eligibility for IFP status, the court must consider whether the Appellant's financial situation has changed significantly since the loan application was submitted. The Cruz v. Superior Court case emphasizes that courts must exercise discretion in evaluating IFP applications, considering whether litigants can afford court fees without sacrificing necessities of life Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175, This principle suggests that the court should not solely rely on past financial declarations but should assess the Plaintiff's current financial situation.

Furthermore, the Cruz v. Superior Court case highlights that courts should not deny IFP status based solely on income exceeding 125 percent of federal poverty guidelines without considering whether the applicant can pay court fees and costs without sacrificing the common necessaries of life for themselves or their families Cruz v. Superior Court 2004, Cal. Ct. App., 120

Cal. App.4th 175. This indicates that the Appellant's past income, as stated in the loan application, should not automatically disqualify him from IFP status if his current financial circumstances justify such status.

The Earls v. Superior Court case further supports the notion that indigents are entitled not merely to access the courts but to timely access, thereby prohibiting unreasonable delays in securing fundamental rights due to poverty Earls v. Superior Court 1971, Cal., 6 Cal.3d 109. This case underscores the importance of ensuring that the Plaintiff's request for IFP status is evaluated based on his current financial ability to afford court fees without compromising his or his family's basic needs.

The court's determination of the Appellant's eligibility for IFP status should be based on a comprehensive evaluation of his current financial situation, rather than solely on the financial information provided in the past loan application. The principles established in Cruz v. Superior Court Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175, and Earls v. Superior Court (Earls v. Superior Court 1971, Cal., 6 Cal.3d 109) provides a legal framework for assessing IFP applications, emphasizing the need for judicial discretion and the consideration of the applicant's current financial circumstances.

This appeal arises from the district court's dismissal of the Appellant's case against Appellee Lafayette Federal Credit Union ["Lafayette FCU"] (see Attachment G), predicated on a perceived contradiction between Appellant's loan application and his declaration to proceed in forma pauperis. The Appellant filed an affidavit in support of his motion for default judgment on January 12, 2024, attaching a loan application dated May 24, 2022, which indicated a monthly income of $7,322 from employment with Pantera Logistics LLC since June 2019. This financial disclosure ostensibly conflicts with the Plaintiff's subsequent declaration for in forma pauperis status, suggesting financial incapacity to pay court fees and costs.

The subject matter jurisdiction of this appeal lies in the examination of the legal standards and judicial discretion involved in the evaluation of In forma Pauperis applications, particularly in cases where the applicant's financial declarations are in apparent contradiction. The appellate court is tasked with determining whether the district court erred in its dismissal of the Plaintiff's case

2

based on the contradiction between the loan application and the in forma pauperis declaration without considering the Appellant's current financial situation or conducting a hearing to resolve the evidentiary conflict.

The appellate jurisdiction is invoked under the premise that the district court's decision may have overlooked critical aspects of judicial discretion and the principles governing access to justice for indigent litigants, as elucidated in Cruz v. Superior Court (Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175) and Earls v. Superior Court (Earls v. Superior Court 1971, Cal., 6 Cal.3d 109) These cases underscore the necessity for courts to exercise discretion beyond mere income levels and to ensure timely access to justice for indigents, taking into account the current financial circumstances and the potential for significant changes in the applicant's financial situation.

This appeal seeks to address whether the district court's reliance solely on the Appellants past financial declaration, without a comprehensive evaluation of his current financial status or a hearing to reconcile the evidentiary conflict, constitutes a misapplication of the legal standards for in forma pauperis eligibility. The resolution of this matter will have significant implications for the principles of fairness, equality, and the fundamental right of access to justice for all individuals, regardless of their financial capacity. Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175; Earls v. Superior Court 1971, Cal., 6 Cal.3d 109; Fuller v. State of California 1969, Cal. Ct. App., 1 Cal.App.3d 664.

3

# STATEMENT OF ISSUES

The following issues arise from the contradictory statements provided by the Plaintiff in his loan application to Lafayette Federal Credit Union ("Lafayette FCU") and his declaration in support of his Request to Proceed In Forma Pauperis:

1. **Contradictory Financial Information**: Does the financial information stated in the Appellant's loan application dated May 24, 2022, which declares a gross monthly income of $7,322 from his employment at Pantera Logistics LLC since June 2019, contradicts the declarations made in his Request to Proceed In Forma Pauperis, potentially affecting the Plaintiff's credibility and the merits of his motion for default judgment?

2. **Eligibility for In Forma Pauperis**: Given the declared income in the loan application, should the Appellant's eligibility to proceed In Forma Pauperis be reevaluated in light of potential misrepresentation or changes in financial status?

3. **Legal Precedent and Standards**: What impact do the legal standards set forth in Mathis v. New York Life Ins., 133 F.3d 546, 547-48 (7th Cir. 1998), have on the present case, particularly concerning the consistency and honesty required in declarations to the court?

4. **Implications for Motion of Default Judgment**: How do the contradictions between the loan application and the In Forma Pauperis declaration affect the Plaintiff's motion for default judgment against Lafayette FCU?

## Legal Question:

5. Whether the Appellant's affidavit in support of his motion for default judgment and the attached loan application, which contradicts his declaration to proceed In Forma Pauperis constitutes a material misrepresentation affecting his eligibility for in forma

4

Pauperis status.

6.  Whether the Plaintiff's financial status at the time of the loan application, as evidenced by the stated monthly income precludes his qualification to proceed in forma pauperis, considering the potential change in circumstances between the date of the loan application and the filing for in forma pauperis status.

7.  Whether the district court should have conducted a hearing prima facie evidentiary conflict between the Plaintiff's loan application and his In forma Pauperis declaration before dismissing the case, in light of the requirement for a prima facie showing of indigency and the court's discretion in evaluating financial eligibility Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175; Earls v. Superior Court 1971, Cal., 6 Cal.3d 109.

8.  Whether the Plaintiff's current financial situation, rather than his financial status at the time of the loan application should be the determining factor for In Forma Pauperis eligibility, and what evidence is required to establish a significant change in financial circumstances. Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175; Earls v. Superior Court 1971, Cal., 6 Cal.3d 109.

9.  Whether the Plaintiff's ability to pay court fees and costs should be assessed based on his current financial obligations and necessities of life, without requiring total destitution, to qualify for in forma pauperis relief Earls v. Superior Court 1971, Cal., 6 Cal.3d 109; Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175; Earls v. Superior Court 1971, Cal., 6 Cal.3d 109; Fuller v. State of California 1969, Cal. Ct. App., 1 Cal.App.3d 664.

5

# STATEMENT OF CASE

In the matter before the Appellate Courts, the Appellant has initiated a motion for default judgment against the Appellee, Lafayette Federal Credit Union ["Lafayette FCU"], predicated on a claim that presumably arises from a dispute related to a loan application submitted by the Appellant to Lafayette FCU on May 24, 2022. Within this application, the Plaintiff disclosed employment with Pantera Logistics LLC since June 2019, with a gross monthly income of $7,322 at that time.

This financial disclosure is central to the current legal contention, as it ostensibly contradicts the Appellant's subsequent declaration in support of his Request to Proceed in forma pauperis, a status that would exempt him from court fees and costs due to financial incapacity.

The legal framework surrounding In Forma Pauperis (IFP) status is intricate, requiring applicants to demonstrate an inability to afford court fees without sacrificing the necessities of life. The Cruz v. Superior Court case elucidates the necessity for courts to exercise discretion in evaluating IFP applications, emphasizing that eligibility should not be strictly tied to income exceeding 125 percent of federal poverty guidelines but should also consider the applicant's ability to pay court fees without compromising essential living standards Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175. This principle is further supported by Earls v. Superior Court, which underscores the entitlement of indigents not merely to access the courts but to timely access, thereby prohibiting unreasonable delays in securing fundamental rights due to poverty Earls v. Superior Court 1971, Cal., 6 Cal.3d 109.

Given the apparent contradiction between the Appellant's loan application and his IFP declaration, the court is tasked with determining the veracity and relevance of the Appellant's financial status at the time of the IFP request. The discrepancy raises questions about the Appellant's financial integrity and eligibility for IFP status. However, as established in Cruz and Earls, the court must consider whether the Plaintiff's current financial situation, possibly altered since the loan application justifies IFP status without necessitating total destitution Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175. Earls v. Superior Court 1971, Cal., 6 Cal.3d 109.

6

Furthermore, the case of Mathis v. New York Life Ins. is invoked to highlight the potential legal implications of discrepancies in financial declarations. While Mathis is not directly cited in the provided references, its mention suggests a precedent concerning the evaluation of financial declarations in legal proceedings. The court's approach in this matter will likely involve a nuanced assessment of the Plaintiff's financial history, current status, and the implications of any discrepancies on his eligibility for IFP status and the integrity of his legal claims.

In summary, the case presents a complex interplay between the Appellant's financial disclosures, eligibility for IFP status, and the broader legal principles governing access to justice for indigent litigants. The court's decision should hinge on a careful examination of the Appellant's financial circumstances, the credibility of his declarations, and the legal standards established by relevant precedents Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175; Earls v. Superior Court 1971, Cal., 6 Cal.3d 109; Fuller v. State of California 1969, Cal. Ct. App., 1 Cal. App.3d 664.

# SUMMARY OF ARGUMENT

Appellant has filed a motion for default judgment against Appellee Lafayette Federal Credit Union ("Lafayette FCU"), supported by an affidavit that includes a loan application submitted to Lafayette FCU on May 24, 2022. This application detailed the Appellant's employment with Pantera Logistics LLC since June 2019 and a gross monthly income of $7,322 at that time.

Despite the apparent contradiction between this loan application and the Appellants later declaration to proceed in forma pauperis, where he claimed financial insufficiency, it is essential to contextualize these financial disclosures. The Appellant argues that the financial information presented in the loan application was accurate at the time but his circumstances deteriorated significantly afterward, leading to the financial distress articulated in his in forma pauperis request.

Furthermore, the Appellant declares that:

1. At the time of the Appellant's request to proceed in forma pauperis on 11/30/2023 the last Tax filing year was 2019. (see Attachment I)

2. In 2020 Pantera Logistics LLC was shut down due to State and Federal Regulations for the COVID-19 Pandemic. Pantera Logistics LLC was not seen as an essential business and was not allowed to reopen until 2022.

3. The Appellant requested the assistance of a document preparation agency that prepared the documents and the request to proceed in forma pauperis. Which resulted in several errors and a transposition of another client's information. (see Attachment H)

4. At the time the Appellant made the request to proceed in forma pauperis the Appellant was under a doctor's care and considered disabled. The appellant was receiving then and currently receiving food stamps and medical, and without means to pay court fees.

Legal precedents, including Mathis v. New York Life Ins., emphasize the need for honest financial reporting. However, they also recognize that a person's financial situation can change drastically and legitimately, which supports the Plaintiff's case that his financial condition at the time of the loan application and the time of filing for In Forma Pauperis status are different due to intervening circumstances.

Furthermore, the Appellee, Lafayette FCU, has failed to respond or contest the Appellant's claims, leading to the necessity of a default judgment. The primary consideration for the court currently is not the inconsistency in financial declarations but whether Lafayette FCU has defaulted on its obligations as alleged by the Appellant. (see Exhibit E)

The Plaintiff, therefore, requests that the Court grant the motion for default judgment,

acknowledging the change in his financial circumstances and focusing on the Appellee's s lack of response to the legal proceedings initiated against them. This judgment is essential not only to uphold legal procedures but also to provide the Plaintiff with necessary relief from his current financial distress.

# ARGUMENT

The Appellant presents the following arguments in support of his motion for default judgment against Appellee Lafayette Federal Credit Union ("Lafayette FCU"): (See Exhibit J)

1. **Validity of Default Judgment Request**: The Appellant asserts that the motion for default judgment is justified due to Lafayette FCU's failure to respond or contest the claims within the legally prescribed time frame. This failure by Appellee Lafayette FCU signifies an implicit concession to the Appellant's claims, thereby warranting a judicial default judgment as a procedural consequence.

2. **Relevance of Financial Disclosures**: While acknowledging the discrepancy between the financial information in his 2022 loan application and his subsequent declaration to proceed in forma pauperis in 2023, the Appellant argues that these documents pertain to different contexts and timeframes. The financial situation detailed in the loan application reflected his circumstances at a specific point, which has since materially changed due to unforeseen economic hardships or changes in employment status that are not uncommon.

3. **Material Change in Circumstances**: The Appellant contends that subsequent to the loan application in May 2022, he encountered significant financial difficulties, such as loss of employment, medical expenses, or other critical changes that severely impacted his financial stability. These changes justify his application to proceed in forma pauperis,

as his current financial status at the time of filing does not mirror his financial condition when he applied for the loan.

4. **Legal Precedent and Interpretation**: Referencing Mathis v. New York Life Ins., the Appellant argues that while consistency in financial declarations is critical, the court must also consider the context and timing of each declaration. The case law does not preclude changes in financial status nor does it bind a litigant to a permanent financial profile based on past declarations. The spirit of the in forma pauperis statute is to enable access to the legal system for those who cannot afford it at the time of filing, regardless of their past financial status.

5. **Equitable Considerations**: Finally, the Appellant urges the court to consider the equitable aspects of the case. He emphasizes that the primary issue at hand is the alleged failure of Appellee Lafayette FCU to address its obligations under the terms of the agreement that led to the lawsuit, not the fluctuations in his financial status. The court's focus, therefore, should remain on whether Lafayette FCU defaulted on its obligations and the consequent relief deserved by the Appellant as a result of such default.

In conclusion, Appellant seeks the court's understanding and favorable judgment on his motion for default, asserting that his financial disclosures, though seemingly contradictory, are honest representations made in different contexts, justified by significant changes in his circumstances.

## CONCLUSION

For the foregoing reasons, Plaintiffs-Appellants respectfully ask this Court to reverse and either remand to the district court for further proceedings or grant the appellant's motion for default judgment against Lafayette Federal Credit Union.

The Appellants motion for default judgment against Lafayette Federal Credit Union , juxtaposed with the contradiction between his loan application and his declaration to proceed in forma pauperis, presents a nuanced legal challenge. The Appellant's affidavit, revealing a substantial monthly income at the time of the loan application ostensibly conflicts with his later claim of financial incapacity, as required for in forma pauperis status. This discrepancy necessitates a careful judicial examination of the Plaintiff's current financial situation, changes in circumstances, and the principles governing access to justice for indigent litigants.

The legal framework, as elucidated in Cruz v. Superior Court (Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175), mandates that courts exercise discretion in evaluating in forma pauperis applications, not strictly basing decisions on income levels but considering whether litigants can afford court fees without sacrificing the necessities of life. This principle is reinforced by Earls v. Superior Court Earls v. Superior Court 1971, Cal., 6 Cal.3d 109, which emphasizes timely access to the courts for indigents, highlighting that financial assessments should account for current circumstances rather than past financial declarations alone.

Given these considerations, the court must delve into whether the Appellant's financial status at the time of filing for in forma pauperis status justifies this request, despite previous declarations of income. This involves assessing whether there has been a significant change in the Appellants financial circumstances would render him unable to afford court fees without compromising his or his family's basic needs. Furthermore, the court may need to conduct a hearing to resolve the evidentiary conflict between the Appellant's loan application and his in forma pauperis declaration, ensuring a fair and comprehensive evaluation of his financial eligibility. Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175; Earls v. Superior Court 1971, Cal., 6 Cal.3d 109.

Ultimately, the resolution of this matter hinges on a balanced consideration of the Appellants current financial situation, the integrity of his legal claims, and the overarching legal principles that safeguard access to justice for all individuals, regardless of their financial capacity. The court's decision will serve as a testament to the judicial system's commitment to fairness,

equality, and the fundamental right of access to justice, as enshrined in the precedents set by Cruz v. Superior Court and Earls v. Superior Court (Cruz v. Superior Court 2004, Cal. Ct. App., 120 Cal.App.4th 175; Earls v. Superior Court 1971, Cal., 6 Cal.3d 109; Fuller v. State of California 1969, Cal. Ct. App., 1 Cal.App.3d 664)

Furthermore, The Appellee Lafayette Federal Credit Union has recently filed a civil action against the Appellant in the Riverside Superior Court. (See Exhibit F) The Appellant has responded in a timely manner and filed a Demurrer on all allegations. (see Exhibit K) Appellee Lafayette Federal Credit Union is a Foreign Corporation and due to non-compliance. with California State Law specifically California Corporation Code Section 2015.

## IMPLIED STAYS PENDING JUDICIAL REVIEW

To address the question regarding the cessation of collection actions while awaiting judicial review for injunctive relief, it's essential to understand the legal principles and precedents that govern such situations. The core issue revolves around the ability to halt ongoing collection or enforcement actions during the period an appeal or review is pending, particularly in cases where injunctive relief is sought or has been granted. The principle of staying enforcement actions pending appeal is rooted in the broader legal objective of preserving the status quo and ensuring that the appellate process is meaningful. This principle is designed to prevent irreparable harm that could occur if the enforcement actions were allowed to continue while the appeal is being considered.

The courts have established criteria for granting a stay, which typically include demonstrating that the party seeking the stay is likely to succeed on the merits of the appeal, that they would suffer irreparable harm in the absence of a stay, and that the balance of equities favors granting the stay Daly v. San Bernardino Cnty. Bd. of Supervisors 2021, Cal., 11 Cal.5th 1030.

In the context of injunctive relief, the courts have recognized the importance of maintaining the effectiveness of their jurisdiction by preserving the status quo until a final decision is made. This is particularly relevant in cases where the relief sought has the effect of preventing ongoing or imminent actions that could cause harm to the parties involved. The courts have the inherent power to issue orders necessary to preserve their jurisdiction, including staying enforcement actions pending appeal People ex rel. San Francisco Bay Conservation and Development Commission v. Town of Emeryville 1968, Cal., 69 Cal.2d 533.

Moreover, the courts have also acknowledged the specific challenges associated with enforcing judgments against financial institutions, as seen in the case of California Commerce Bank v. Superior Court California; Commerce Bank v. Superior Court 1992, Cal. Ct. App., 8 Cal.App.4th 582. In this case, the court clarified the conditions under which enforcement of a judgment could be stayed pending appeal, emphasizing the need to balance the interests of the parties involved and the broader objectives of the legal system.

In summary, the legal framework allows for collection actions to be ceased while awaiting judicial review for injunctive relief, provided that the necessary criteria are met. This approach ensures that the appellate process is not rendered moot by changes that occur during its pendency and that parties are not subjected to irreparable harm while their appeals are being considered.

Injunctive relief is a legal remedy often sought in civil lawsuits, where a court order is requested to either compel or prevent a party from performing a specific act. This type of relief is particularly relevant in situations where monetary damages are insufficient to remedy the harm experienced by the Appellant. The essence of injunctive relief is to maintain the status quo or prevent further harm until the court can make a final decision on the matter at hand. The cases

provided in the context do not directly address injunctive relief. However, understanding the principles and applications of injunctive relief can be beneficial in various legal scenarios, including those involving disputes over personal jurisdiction, failure to state a claim, and the enforcement of <u>foreign judgments</u>, as discussed in the conversation history.

The Appellee failed to respond and or defend (see Exhibit E) in the previously filed action in the United States District Court Central District Eastern Division Titled Winston Maurice Brown v. Lafayette Federal Credit Union, et al.  (See Exhibit A, B & C)

The Appellee and their Counsel knowing of the action filed in the District Court having been properly served per Rule 4, chose to use the Superior Court of California to bring action against the Appellant Winston Maurice Brown, an action that is clearly a matter of diversity. This action and filing were not done out of inexperience or inadvertence, nor by mistake. The filing with this court was a strategic tactic by counsel to obstruct the legal process and convolute the records, and ultimately create undo confusion and speculation.
Which could lead to a favorable ruling to offset the inevitable in the district court matter.
(See Exhibit F)
There was no legal nor jurisdictional reason for the Appellee to file a civil complaint in Riverside Superior Court when there's an impending matter in the district courts presenting the same issues of Contract breach.

The Appellee was properly severed per rule 4 (see Exhibit A, B & C), and counsel for the Appellee, an Officer of the Court, knowing that their client wasn't properly registered as a foreign Corporation with the Secretary of State of California as per California Corporations Code section 2105 intentionally submitted false information to the Court for the record as true and correct.
 (see Exhibit D)

In Counsel's Declaration Regarding Venue Civil Code § 396(a), Counsel checked the

box corresponding to the phrase "A Defendant Lives Here now "as to infer that the Appellant

either at some time in his life or during the alleged date of the contract Appellee was a

resident of the State of Maryland hence would provide just cause and legal standing to bring suit

in a State Superior Court without being compliant with State Law per California Corporations

Code Section 2105. (see Exhibit D)

The Appellant Winston Maurice Brown has been a resident of the State of California

since 1978 and has never been a resident nor conducted any business in the State of Maryland.

Counsel for the Appellee submitted this information to the courts knowing it to be false.

(See Exhibit D)

The Appellee and their Counsel being fully aware of the impending litigation in the

District Court of California Winston Maurice Brown v. Lafayette Federal Credit Union, et al.

, and having been properly served (See Exhibit A & B) knew that one of the causes of action

being considered by the Court was Winston Maurice Brown's request for preliminary and

permanent and permanent Injunctive relief.

The Appellee Lafayette Federal Credit Union has continuously ignored the status quo

when the court is considering a motion or a request by one of the parties. Lafayette Federal

Credit Union has continued to report false information on the Defendants credit report, continued

to send Harassing and threatening letters to the Defendants home, threatening phone calls, and

being subjected to abusive disrespectful language. And now false litigation by deceit.

The Appellee breached the contract and the Appellant exhausted all remedies to bring the

matter to a peaceful resolution before litigation effort became the only option. However, at every

effort the Appellee was not even willing to respond to any organizations for ADR

15

(Alternative Dispute Resolution).

By the Appellee and their counsel filing this action in the Superior Court is just another form of intimidation and demonstration of the continued harassment and bullying from the Plaintiff Lafayette Federal Credit Union. As well as a violation of the Appellant's 7th Amendment rights to a jury trial.

## STATEMENT REGARDING ORAL ARGUMENT

The Appellant respectfully requests that the Court grant the motion for default judgment against Appellee Lafayette Federal Credit Union ("Lafayette FCU"). The appellant emphasizes that the core issue necessitating this motion is Lafayette FCU's failure to fulfill its legal obligations and its lack of response to the claims put forth, rather than the discrepancies in financial declarations raised by. (See Exhibit E & J)

The Appellant acknowledges the apparent contradiction between the financial information provided in the 2022 loan application and his later declaration to proceed in forma pauperis in 2023.

However, it is imperative to recognize that these documents reflect significantly different financial conditions influenced by subsequent and unforeseeable economic hardships, including the potential loss of employment increased living costs, or other severe financial setbacks.

The legal principles, as discussed in precedents such as Mathis v. New York Life Ins., support the consideration of changing circumstances in financial status. It is these principles that the Appellant invokes, arguing for the Court's understanding and compassion regarding the discrepancies in his financial declarations.

Therefore, the Appellant requests that the Court look favorably upon his motion for default judgment. Granting this motion is not only justified given the Appellee's failure to contest the

16

claims within the stipulated period but is also a necessary step to provide relief to the Appellant, who now faces financial adversity. This judgment will allow the Appellant to move forward and seek recovery under the law, thus upholding the principles of justice and fairness inherent to our legal system.

Respectfully Submitted.

Winston Maurice Brown, In Pro Se

May 21st 2024

SUBMITTED BY:
Winston Maurice Brown
24102 Madeira Ln
Murrieta, Ca. 92562
951-407-5553
Mauricewb1@mail.com

17

# CERTIFICATE OF SERVICE

I hereby certify that this brief complies with the requirements of Federal Rules of Appellate Procedures 32 (a)(7)(B) because this brief contains **5087** words, excluding the parts of the brief exempted by Rule 32 (a)(7)(B)(iii).

I further certify that this brief complies with the typeface requirements of Federal Rules of Appellate Procedures 32 (a)(5) and typeface – style requirements of Rule 32 (a)(6) because this brief has been prepared in **14- point** Times New Roman font, a proportionally spaced typeface, using Microsoft Word 2021.

Winston Maurice Brown, In Pro Se

Dated: May 22nd, 2024

RECEIVED
MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MAY 2 4 2024

FILED
DOCKETED
DATE
INITIAL

# CERTIFICATE OF SERVICE

**Instructions for Electronic Filers:** For persons filing electronically, CM/ECF serves all registered CM/ECF users, and no certificate of service is required for such service. A certificate of service is required from an electronic filer, however, in the following circumstances:

- To certify that a non-user of CM/ECF has been served;
- To certify that a manual filing (not available in electronic form), has been served;
- To certify that a sealed document has been served;
- To certify that a case-initiating document, such as a petition for review, petition for permission to appeal, or petition for writ of mandamus, has been served.

**Instructions for Paper Filers:** For persons filing in paper form, service must be accomplished outside CM/ECF, and a certificate of service is required for all documents.

Case No. ___24-2839___     Case Caption Brown v. Lafayette Federal Credit Union

I certify that on ___05/22/2024___, the Opening Breif of Appenant Winston Maurice Brown
                (date)                         (document title)
was served by [ ] personal delivery; [ ] mail; [X] third-party commercial carrier; or [ ] email

(with written consent) on the following persons at the addresses or email addresses shown:

(Name and Address or Email Address )
Lafayette Federal Credit Union
2701 Tower Oaks Blvd.
Rockville, MD 20852

HFS Financial Services
100 Owings Ct. #13
Reisterstown, MD. 21136

Rea Stelmach, Esq. (SBN 2967761)
Silverman Theologou, LLP
11853 W. Olympic Blvd. Ste# 855E
Los Angeles, California  90064

_____          _____05/22/2024_____
        Signature                                        Date